**S. T. TRINGALI CO., Inc.**

v.

**The TUG PEMEX XV, her engines, tackle, furniture and appurtenances, in rem, and Petroleos Mexicanos, her Owner, in personam.**

**No. 65–B–8.**

United States District Court
S. D. Texas,
Brownsville Division.

Oct. 17, 1967.

Cox, Wilson, Duncan & Clendenin (Tom Clendenin, Jr.), Brownsville, Tex., for libellant.

Hardy & Sharpe, (Benjamin S. Hardy), Brownsville, Tex., for respondent.

MEMORANDUM AND JUDGMENT

GARZA, District Judge.

This is a suit for damages, brought by S. T. Tringali Co., Inc., as owner of the O/S JO-FRANCES, a shrimp trawler, that it claims was damaged when it was in a collision with the Tug PEMEX XV and its barge that it had in tow.

The case was tried before the Court on August 24, 1967, and live witnesses were heard and the depositions of others were introduced. Briefs have been filed by the parties, and the case is now ready for decision by this Court.

The O/S JO-FRANCES is a 61.6 foot shrimp trawler owned by S. T. Tringali Co., Inc., a Florida corporation.

The PEMEX XV, a tug, and the PEMEX BARGE 494 at all times material to this cause were owned by Petroleos Mexicanos, a government-owned corporation of the Republic of Mexico, which is engaged in commercial production and sale of petroleum products, and was not performing a governmental function at the time of the collision in question.

On April 14, 1964, at approximately 16.05 hours, the PEMEX XV with one barge in long tow set sail from the Port of Campeche, Mexico, for the Port of Minatitlan in the State of Vera Cruz, Mexico. The tug and its tow were proceeding upon a course of 241 degrees true with uneventful sailing until approximately 21.30 hours when a fishing vessel (which later turned out to be the O/S JO-FRANCES) was sighted 30 degrees on the port bow of the PEMEX XV.

At the time the JO-FRANCES was sighted, it was traveling on a parallel course with the PEMEX XV and tow until a green side light began to show on the JO-FRANCES, which indicated that her course was changing to starboard.

Upon noticing the change of course of the JO-FRANCES, the officer on watch ordered the course of the PEMEX XV and its tow changed to 271 degrees true, which would enable the PEMEX XV and its tow to steer clear of the JO-FRANCES.

The JO-FRANCES made a complete turn to starboard and was then meeting the PEMEX XV and tow in a port to port passing situation, and passed the PEMEX XV on the port side at approximately one-fourth of a mile distant.

After the JO-FRANCES passed the PEMEX XV, the Captain of the JO-FRANCES changed his course suddenly

to port, and collided with the PEMEX BARGE 494 at approximately 22.21 hours.

The collision took place in international waters about thirty miles off the Mexican coast at an estimated position of Latitude 19 deg. 34 min. North, and Longitude 91 deg. 15 min. West.

■ The maneuvers of the vessels involved in this collision were governed by the International Rules for Navigation at Sea, 33 U.S.C. § 144 et seq.

From the evidence before me, I find that the tug PEMEX XV at all times was displaying the proper lights required by the International Rules, as was the case with PEMEX BARGE 494.

The Captain of the JO-FRANCES, Kellis Brinn, was in exclusive control and at the wheel of the JO-FRANCES with an automatic pilot engaged when the collision occurred.

The Captain of the JO-FRANCES has testified that he did not know that the three white lights displayed upon the mast of the tug PEMEX XV, as required by Rule 3 of the International Rules, indicated a tug with tow of over 600 feet. He claims never to have seen the lights on the barge, but from the evidence before the Court, I find that the lights required to be on the barge were there.

It is possible for a shrimp trawler, such as the JO-FRANCES, to approach a tug and its tow from approximately a ninety degree angle and not see the lights on the barge, but the three white lights on the mast of the tug should have indicated to Captain Brinn of the JO-FRANCES that it had a barge in tow of over 600 feet.

■ Captain Brinn, however, did not know the meaning of the lights on the tug and was unaware of the tow. Because of this, I find that he was incompetent for night navigation in international waters, and his incompetence was the cause of the collision in question.

The two main officers on board the PEMEX XV have testified before the Court; and I find them to be competent and not guilty of any negligence in any respect, and that the PEMEX XV and PEMEX BARGE NO. 494 did not cause or contribute to the collision in any manner.

After the collision, the officers and crew of the PEMEX XV inquired of the JO-FRANCES whether or not there were any injuries and if assistance was needed. Even though there seemed to be a language barrier, from the signs received by the officers of the PEMEX XV, they were led to believe that even though damages had been caused to the JO-FRANCES, assistance was not needed, and they proceeded on their voyage.

Having found that the sole cause of the collision in question was the failure of those aboard the O/S JO-FRANCES to keep a proper lookout for the PEMEX BARGE NO. 494, the damaged claimant is not entitled to a decree for damages.

When this suit was filed, it was filed against the tug PEMEX XV, her engines, tackle, furniture and appurtenances, in rem, and Petroleos Mexicanos, in personam.

A writ of attachment was requested and issued, and the SS PRESIDENTE JUAREZ, an ocean-going tanker, the property of Petroleos Mexicanos, was seized to acquire jurisdiction and security in the suit. Subsequent to the seizure of the SS PRESIDENTE JUAREZ, a special appearance was filed and a release of the vessel obtained by posting bond. After bond was posted, Libellant served the local agent of Petroleos Mexicanos, Mr. Severo Villarreal, with citation, and then Petroleos Mexicanos, also known as PEMEX, answered.

Petroleos Mexicanos now contends that the seizure of the SS PRESIDENTE JUAREZ was unauthorized because it is the property of a friendly sovereign power and thus is immune from seizure for security and satisfaction of judgments; and that the seizure should be quashed and also the bond posted for its release.

Chief Judge Connally, of this District, in United States, Libellant, v. Tug

PEMEX XV, in rem and Barge PEMEX 559, in rem, and Petroleos Mexicanos, in personam, et al, Respondents, 1960 A.M.C. 896, held that under the current executive policy adhering to the "restrictive theory" of sovereign immunity, Petroleos Mexicanos being a government-owned corporation engaged in the production, refining and distribution of petroleum, its vessels are not entitled to the defense of sovereign immunity in the courts of the United States since they are not in the possession and ownership of a foreign sovereign, but are owned and operated by an independent corporation and its vessels were engaged in private commercial activity and are not engaged in a public or governmental function.

The Respondent, Petroleos Mexicanos, is urging on the Court the distinction between the seizure of its vessels for the purpose of acquiring jurisdiction, and the sale of its vessels to satisfy judgments against it, and that the State Department of the United States has taken the position that property of a friendly foreign state is not immune from attachment in order to acquire jurisdiction, but that the same property is immune from execution in satisfaction of any judgment obtained in the suit; and cites the case of Flota Maritima Browning de Cuba, Sociedad Anonima v. M/V CIUDAD DE LA HABANA, her Motors, &c., Banco Cubano del Comercio Exterior, succeeded by Banco Para El Comercio Exterior, De Cuba, &c., 4 Cir., 335 F.2d 619.

The decision by this Court as to the question of liability would seem to make the question of the quashing of the seizure and the bond moot, but the question of costs might still bring this question to the surface. Petroleos Mexicanos is also constantly sending its vessels into American ports, and it might be necessary that this question be decided for the future.

■ This Court agrees that the property of a friendly foreign government may be immune from execution, such as its credits in banks and the like. The vessels of Petroleos Mexicanos, however, are not considered as being owned by the Republic of Mexico, but by an independent corporation engaged in a private commercial activity; and I, therefore, hold that the vessels of Petroleos Mexicanos, also known as PEMEX, may not only be seized to acquire jurisdiction, but will have to respond for damages; and that Petroleos Mexicanos, when one of its vessels is seized, such as the SS PRESIDENTE JUAREZ was in this case, may either post a bond for its release, which bond will be responsible for the damages found, or may allow the vessel to remain seized, and if damages are assessed againt Petroleos Mexicanos, the vessel seized may be sold to satisfy the judgment.

The Respondent's request that the seizure of the SS PRESIDENTE JUAREZ and the bond posted for its release be quashed, is, therefore, denied.

It is, therefore, ordered, adjudged and decreed by this court that the claim of the Libellant, S. T. Tringali Co., Inc., is without merit in that the crew of its shrimp trawler O/S JO-FRANCES were solely at fault for the collision in question, and that its libel should be, and the same is hereby dismissed; and Petroleos Mexicanos is discharged with its costs which are taxed against the Libellant S. T. Tringali Co., Inc.; but no costs are to be taxed for the seizure of the SS PRESIDENTE JUAREZ and its later release.

This constitutes the Findings of Fact and Conclusions of Law of this Court, and is also a Final Judgment.

The Clerk will send to counsel for the parties, copies of this Memorandum and Judgment.